EASTERN MARYLAND DISTRICT MEETING
OF CHURCH OF BRETHREN *v.* UNION BRIDGE
BANKING AND TRUST CO. ET AL

[No. 73, October Term, 1944.]

*Decided January 10, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON. and HENDERSON, JJ.

*Theodore F. Brown* and *Omar T. Kaylor,* with whom was *A. Earl Shipley* on the brief, for the appellant.

*Francis Neal Parke* for the appellees.

GRASON, J., delivered the opinion of the Court.

The Union Bridge Banking and Trust Company, a body corporate, together with the individual plaintiffs, instituted this case against the Blue Ridge College (herein referred to as College), the Eastern Maryland District Meeting of the Church of the Brethren (herein referred to as the Church), both corporations, and Theodore F. Brown, attorney named in a mortgage for the purpose of foreclosure. The suit is brought on behalf of the plaintiffs, who sue as creditors of the Blue Ridge College, as well as on behalf of all other creditors of the College, who come in and contribute to the expenses of the suit.

The circumstances out of which this litigation arose are, in brief, as follows: Sometime before 1900, the Church, a religious denomination, determined to organize a school, limited to students whose parents were members of the Church. The teachers were also to be members of this denomination. In conformity with this purpose, in 1900 the Church caused to be organized the Maryland Collegiate Institute, a corporation. It provided for the organization and operation of such a school. The curriculum corresponded to courses prescribed by high schools. At that time there were not many high schools maintained under the public school system, but in a few years following this venture by the Church such schools came to be relatively numerous, and the need for the Institute was largely fulfilled. In 1910 the Church caused the charter of the Institute to be changed. It was given the title of The Blue Ridge College and authorized to operate a college. The teachers and students were limited to those having membership in the Church. The Institute had a capital stock of $25,000, divided into one thousand shares of the par value of $25 each. There was no change made in this feature by the Act of 1910. The old Institute was located at Union Bridge but the College was located at New Windsor, Carroll County, Maryland. In 1906 The Eastern Maryland District Meeting of the German Baptist Brethren was incorporated. Laws 1906, c. 79. Its name was changed to its present name by the Act of 1920, Chapter 628. The testimony shows that the corporation was to be a holding and fiscal agent for the Church. This corporation, in 1937, as is shown by the evidence in this case, held 940 shares of the stock of the College. For a long number of years before the happening of the events involved in this case, the College built up an Endowment Fund. Under the terms of the gifts to this Fund, if the College ceased to be operated under the control of the Church the money contained therein would become the property of the General Educational Board of the Church. There was subscribed to this Fund $86,000, but only between $25,000 and $30,000 of this

subscription was paid. As these subscriptions were paid they were utilized by the College to erect buildings on the campus. As the College used this money it gave its note to the Fund, and in 1937 the College owed the Endowment Fund between $29,000 and $30,000. Former students and graduates of the College made donations which went into an account known as the Alumni Association Account. About $3,000 taken from this Account was invested in college buildings.

On the 27th day of June, 1933, the will of Annie R. Stoner was admitted to probate by the Orphans' Court of Carroll County. Under this will she left the Blue Ridge College two farms containing two hundred and seventy-five acres of land, and a lot of land improved by a tenant house, which adjoins the farms. She stated therein it was her desire that the fund arising therefrom "be devoted to whatever may be most advantageous to said Blue Ridge College in the judgment of its board of trustees." All the rest and residue of her estate, "including legacy or devise hereinbefore set forth failing for any reason," is given to the College, with request that the proceeds therefrom be kept separate from other property of the College and be designated the "Roop and Stoner Endowment."

In 1927 the Church concluded it was operating too many colleges within a given radius and they determined to sell the Blue Ridge College. To quote from the testimony: "While the school was not a burden on the Church, especially, it was operating without any outstanding deficiency any time. We decided we would like to dispose of the plant and save our resources for the other schools." It was offered to the County. In 1928 there was some negotiation for the sale of the College, conducted with Paul N. Hornbeck and The National Bureau of Private Schools, but these negotiations failed. Hornbeck, it seems, endeavored to procure a purchaser for this College and in 1937 he produced some New Jersey interests, headed by Judge Ullrich. This resulted in the New Jersey interests buying all of the shares of stock issued by the Blue Ridge College, thus getting control of the institution.

The original holdings of the College consisted of about twenty-five acres of land and the College buildings. In addition to this it acquired, including other real estate, the property devised to it under the will of Mrs. Stoner. The Eastern Maryland District Meeting of the Church of the Brethren, a corporation, owned 940 shares of the stock of the Blue Ridge College. The College was indebted to the Endowment Fund in the sum of between $29,000 and $30,000 and indebted to the Alumni Association Account in the amount of $3,000. It was otherwise indebted in the sum of about $15,000. The New Jersey interests were concerned with the twenty-five acres belonging to the College, together with its buildings, and wanted to control the stock of the Blue Ridge College and hence control that property for the purpose of conducting a non-sectarian college. It was necessary for the College to acquire its stock which was owned by the Church. The College conveyed all of its holdings to the Church corporation, with the exception of the twenty-five acres and buildings comprising the College property, which was all of the property involved in the sale. The Church endorsed its stock to the College and agreed to assume the debts of the College. The College then executed to the Church the mortgage in question. The consideration for the mortgage is between $29,000 and $30,000, owed by the College to the Endowment Fund; commission on sale, $5,000; and an indebtedness of the College of about $15,000. All of this was assumed by the Church. The Church also assumed the payment of $3,000 owed to the Alumni Association Account by the College. The College conveyed all of the property owned by it, not included in the sale to the New Jersey interests, to the Church. It executed the mortgage to the Church and the Church endorsed the stock of the College held by it to the College. The mortgage and deed were duly recorded. The College then transferred the stock to the New Jersey interests. There had been $1,000 paid by the New Jersey interests to the College prior thereto. The Church did not thereafter operate the College. The New Jersey inter-

ests took possession of the College and operated it. In March, 1938, these interests organized a corporation known as the New Windsor Educational Foundation, Incorporated, and transferred the stock of the Blue Ridge College to it. This corporation was dissolved in November, 1938.

When the notes of the Blue Ridge College, which were assumed by the Church, matured, they were taken up and notes of the Church given in lieu thereof. None of the creditors of the College appears to have objected to this arrangement and payment has been made on some of the notes originally given by the College. The principal in some of these notes was increased by the Church. The New Jersey interests, because of the manner in which they operated the school in the summer of 1937, got into financial trouble and the Church helped it out. Even after the sale of the College, and it ceased to be a sectarian and became a non-sectarian institution, the Church was interested in its welfare and in its success. It helped the College and, without giving the circumstances that brought about the result, the Church did reduce its mortgage to $34,500.

The trustees of the College appointed a committee to look into its financial affairs. This committee caused an equity suit to be instituted in the Circuit Court for Carroll County for the purpose of setting aside the mortgage referred to. The action of the committee and its attorney in this regard was repudiated by the trustees and the case dismissed. Thereafter, upon default in the mortgage, it was assigned to Mr. Brown, who instituted foreclosure proceedings. It was thereafter that the bill in this case was filed.

All of the plaintiffs in this case, and those who have filed claims therein, became creditors of the College after the New Jersey interests acquired control of the College property by purchase of its stock.

In paragraph seven the bill alleges that the mortgage here involved is without consideration; that the debt evidenced thereby is and was simulated; that it was exe-

cuted and delivered covinously and deceitfully for the purpose of cheating and defrauding subsequent creditors of the College, and to cheat, hinder, delay and defraud existing creditors of the College and all subsequent creditors thereof.

Paragraph eleven of the bill avers that the deed here involved is without adequate consideration and that the parties thereto were actuated with the common design and purpose to put the property conveyed beyond the reach of subsisting and subsequent creditors of the College, and to prevent the collection of any judgment, if recovered by any subsisting or subsequent creditor of the College.

The bill prays, among other things: 1. That the foreclosure proceedings be stayed. 2. That the mortgage and mortgage debt represented by the mortgage referred to be declared null and void. 3. That the deed from the College to the Church corporation referred to be declared null and void. There are other prayers, including one for general relief, which need not be referred to. The bill was answered by The Eastern Maryland District Meeting of the Church of the Brethren, in which all of the material allegations of the bill are denied. The Blue Ridge College denied the fraud imputed to it in the bill and submitted its case on the answer filed thereto by the Church. Testimony was taken, the case argued, opinion of the Court was filed and, in conformity with the opinion, on the 20th day of July, 1944, the Court decreed that the Blue Ridge College was indebted to the plaintiffs in the amounts therein specified, that the deed from the College to the Church "be and the same is hereby declared to be null and and void as against the plaintiffs and all other creditors of the said defendant, the Blue Ridge College, who may come in as parties to this suit." That the mortgage from the Blue Ridge College to the Church referred to "be and the same is hereby declared to be null and void as against the plaintiffs and all other creditors of said defendant, the Blue Ridge College, who may come in as parties to this suit." There

were other provisions in the decree that need not be referred to. From this decree the appeal in this case was taken.

After a careful consideration of the evidence contained in this record, we are of the opinion that the execution of the deed and mortgage involved in this case, and the endorsement of the stock from the Church to the College and from it to the New Jersey interests constituted one transaction. The evidence is clear that at the time this transaction was consummated all of the debts then existing of the Blue Ridge College were assumed by the Church. After this transaction was completed the New Jersey interests operated this school as a non-sectarian institution. It was not conducted thereafter by the Blue Ridge College as a sectarian school and the Church was not interested in it as a school, so far as its operation was concerned. It is true that the Church, under whose control the College had so long been operated as a sectarian school, wanted to see it operated with success by the New Jersey interests. The institution certainly had the good will of the Church, but the Church was not operating it nor financially interested in it, except in so far as the mortgage it held. The Church did try to help the school after it was sold, but the mere fact that it did do this is hardly evidence of fraud. When the obligations of the College, which were assumed by the Church, became due, they were renewed by the Church, and so far as this record is concerned there is not a creditor of the College existing at the time of this transaction that has attacked these conveyances from the College to the Church. All four of the natural plaintiffs in this case were teachers at the College after it was acquired by the New Jersey interests. Their claims were for salaries for the years 1940 to 1941 and 1941 to 1942.

There can be no doubt that the sale embraced only about twenty-five acres and the College buildings. All the evidence shows that the purchasers never intended the sale to include the farms nor the lots and houses. The purchasers, the Church and College intended that with the sale of the stock of the College only the property

used for college purposes would pass. It was, therefore, necessary that the farms and houses owned by the College, not embraced in the sale, should be disposed of before the stock was transferred to the purchasers.

We cannot accept the contention that after the sale the Church operated the College, and that the conveyances of the College left it without sufficient capital for the purpose. After this transaction the College had no creditors, for its debts were assumed by the Church. No subsisting creditor of the College registered a complaint. The Church did operate the College, but it was withdrawing from that activity and was selling the College. The College was not about to engage in business for which the property remaining in its hands after the conveyances would be an unreasonably small capital. It was going out of business and was selling the plant. Thereafter the College ceased to operate as an instrumentality of the Church and was not so operated. Hence no future obligations could be incurred by it as a Church institution. The contention in the case presents but one question: Did these conveyances violate Section 7 of Article 39B of Flack's Code of 1939? In order to bring the case within the purview of this section, the burden of proof was on the plaintiffs to show that at the time of the execution of the conveyances the College thereby "actually intended" to hinder, delay and defraud present and future creditors. *Oakford Realty Co. v. Boarman,* 156 Md. 65, 143 A. 644; *Neeb v. Atlantic Mill, etc., Co.,* 176 Md. 297, 306, 5 A. 2d 283. Without prolonging this opinion it is sufficient to say we think appellees have failed to meet this burden.

From 1900 to 1937 this Church, through its members, in the operation of the Academy and then the College, performed an admirable service. It did not seek profits, but conducted these educational institutions for their innate good, at the expenditure of much labor. We do not find that fraud has been shown.

*Decree reversed and bill of complaint dismissed, with costs to appellants.*